2673. GAY *et al. v.* GAY.

The court erred in directing a verdict. Whether the defendant was ignorant of the fact that usury was included in the note which he signed as surety was an issuable fact, to be passed upon by the jury. The question for decision was whether the defendant had reasonable ground to suspect the existence of usury. Even if his ignorance was due to negligence, and, therefore, he might be presumed to know that which he in fact did not know, still the very existence of the antecedent negligence necessary to raise the presumption depended upon a finding that certain facts, under the peculiar circumstances of the particular case, established the existence of negligence. Due diligence and culpable negligence are each a compound in the manufacture of which the jury have exclusive proprietary rights.

DECIDED FEBRUARY 15, 1911.

Complaint; from city court of Dublin—Judge Hawkins. May 9, 1910.

*James B. Sanders,* for plaintiffs in error.

*M. H. Blackshear,* contra.

RUSSELL, J. We think the judge erred in directing a verdict in favor of the plaintiff, though the evidence is in the main harmonious. The plaintiff sued three defendants as coprincipals. The defendant Hobbs set up the defense that while he apparently signed the note in question as principal, he was in fact only a surety, that without his knowledge usury was included in the note, that the note contained a waiver of homestead which the usury would avoid, and that therefore his risk had been increased so as to entitle him to be discharged. Upon the trial it appeared that the note contained a waiver of homestead and exemption rights. There was no contradiction of Hobbs' testimony that he was merely a surety, and it was admitted in the testimony in behalf of the plaintiff that the contract was usurious. Hobbs testified that he did not know that usury was included in the note at the time that he signed it. In addition, however, Hobbs stated that the note was given in renewal of another note, and that he knew the principal of the former note was $277. At the conclusion of the evidence the court directed a verdict in favor of the plaintiff. We think this was error, because the evidence we are quoting, taken in connection with other circumstances appearing from the record, did not necessarily require the inference that Hobbs knew that usury was included in the note. Hobbs swore that he did not know that usury was included in the note. The direction of a verdict to the contrary can only be au-

thorized upon the theory that, although Hobbs did not actually know that the note was usurious, constructively he did, because he ought to have known it. It is argued by counsel for the defendant in error that because Hobbs knew that only $277 was due on the old note, which the new note was intended to replace, and as the new note was for $300, he must be conclusively presumed to have known that the difference between $277 and $300 was $23, and that he must, therefore, also have known that $23 was an amount in excess of the necessary interest computed at the lawful rate. The point is made that "he knew that $23 interest was charged in the new note, although he may not have actually known that $23 interest on the $277 for the given time exceeded 8 per cent. per annum." It is therefore contended that in law Hobbs had notice at the time he signed the last note that more than 8 per cent. interest was charged, and section 3933 of the Civil Code of 1895 is cited, in which it is declared that "ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of the parties." It is insisted that there is nothing in the evidence to suggest that the plaintiff was an ignorant or illiterate man, and that by the exercise of the most ordinary business prudence and inquiry he could have ascertained the facts, and that, if he was negligent, his very negligence fixed the rights of the parties. As we see the evidence, all these questions should have been submitted to the jury. In the light of the present record, Hobbs would have been entitled to be discharged as a surety if he did not know that there was usury in the note. His positive statement that he did not know this fact would have to be disproved in some way. The judge could not find as a matter of law, any more than the jury would have been obliged to find from the facts, that Hobbs was negligent, or that he had such notice of the existence of usury as that he must be conclusively presumed to have known that usury was included in the note. From the fact that the new note for $300 which was given to Mrs. A. D. Gay in order to pay the old note for $277, which was payable not to Mrs. Gay, but to her husband, J. A. Gay, the inference that the difference of $23 was usury is no more reasonable that the inference that the principal debtor, in securing the money from Mrs. Gay to pay Mr. Gay's note, had procured a small additional advance. To our minds the latter assumption is more reasonable than the former, because the presumption that contracts are made within the

terms of the law is rather to be indulged than that they are usurious and made in defiance of the law. The difference between the old note and the new note, as stated by counsel for the defendant in error, is necessarily $23, and Hobbs, no doubt, knew that; but the interest on the $277 from July 21, when the old note was taken up, until October 1, when the $300 note matured, at 8 per cent., is only $4.30. We hardly think that it would be as natural to suspect that one would take advantage of the necessities of another to extort $23 for the use of $277 for two months and ten days as to imagine (taking into consideration the season of the year, and the general prevailing scarcity of money in our section of the country at that season) that the defendant had procured an additional advance, or else perhaps owed Mrs. Gay a sum in addition to that which she had paid to Mr. Gay in the debtor's behalf. But be that as it may, even if the defendant Hobbs was advised by the circumstances to such an extent as that he might be adjudged negligent unless he made inquiry before signing the note, who is to determine whether he was negligent under the circumstances? Negligence is a question of fact, to be determined from proof which establishes an absence of diligence; and it is for the jury at last, after finding certain facts to exist, to say whether the proved circumstances establish negligence. It was for the jury in this case to say whether Hobbs was negligent in not making inquiry into the question of usury, however, only after they had first determined that the fact there was $23 difference in the notes, or other circumstances, afforded Hobbs reasonable cause to suspect the existence of usury. The first fact to be determined is whether Hobbs knew that there was usury in the note. He stated that he did not, although he knew that the new note was $23 larger than the old note. It was for the jury to say, under all of the facts and circumstances, whether this knowledge was such a circumstance as to put him on notice that there was usury in the note, or as at least to suggest inquiry which would have led to knowledge. If the circumstances were not sufficient to lead him, as a man of ordinary intelligence, to infer that there was usury in the note, and he did not actually know the fact, then as a surety he would be relieved. Whether the defendant was ignorant of the fact that usury was included in the note which he signed as surety was an issuable fact to be passed upon by the jury. Even if his ignorance was due to his failure to

draw a reasonable inference from the facts, if he was in fact igno-
rant that the note contained usury he would be relieved. If it be
said that he was negligent, and that therefore he might be pre-
sumed to know that which he in fact disclaimed knowing, still the
very existence of that negligence necessary to raise the presump-
tion depended upon a finding that the proved facts constituted neg-
ligence under the peculiar circumstances of the particular case.
Due diligence and culpable negligence are each a compound in the
manufacture of which the jury have exclusive proprietary rights.
The witnesses furnish the facts, while the jurors mold them into a
verdict.  The court erred in directing the verdict.

*Judgment reversed.*